MIDDLE DISTRICT
NORTHERN DIVISION
FEDERAL DISTRICT COURT
RECEIVED

RENA D. STINSON
Petitioner

2007 MAR 14  A 9: 21

2:07 cv 225 -WHA

v.

Case Number: 2004-1694

STATE OF ALABAMA
Respondent

DEBRA P. HACKETT
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Rena D. Stinson, Pro Se, comes before this court filing a Petition for Writ of Habeas Corpus.

Petitioner during this cause has been denied United States Constitutional Rights, State of Alabama Constitutional Rights of 1901, as well as Federal and Statutory Laws.

Petitioner comes before this court and petition this court to grant a Writ of Habeas Corpus and states:

Petitioner has filed an appeal that was affirm.

Petitioner has filed an application of rehearing that was overruled.

Petitioner Writ of Certiorari was dismissed due to untimely being filed.

Petitioner presently went Pro Se after obtaining legal representation of three paid counsel that were all ineffective assistace of counselors as the enclosed documentation will confirm.

Petitioner has enclosed a variety of information and letters, statements, etc to support the  Petition for

Habeas Corpus as follows:

1. Petitioner is a citizen of the State of Alabama, currently assigned to Birmingham Community Workcenter, in Birmingham Alabama, Department of Corrections.

2. Petitioner filed an appeal with the Alabama Court of Criminal Appeal, raising the following issues:
     a. Petitioner was denied an arraignment.
     b. Sufficiency of Evidence

3. Petitioner attorney Richard Keith filed these grounds on his own without Petitioner being in agreement because Petitioner after discovering that he was not going to include ineffective assistance of counselors as the trial attorney was ineffective in many areas as Writ will show.

4. Petitioner never had an opportunity to enter a plea.

5. Petitioner was not never notified of any court appearance by the circuit court, the arraignment, any hearings, or the trial itself.

6. Petitioner was not arraigned as required by the Alabama State Constitution and the U.S. Constitution.

7. Petitioner was not allowed a preliminary hearing as required.

8. Petitioner was not allowed by trial attorney to have witnesses.

9. Petitioner was not allowed to testify even thou Petitioner wanted to and beg to testify.

10. Petitioner was not allowed to give an alibi.

11. Petitioner was notified of the trial less than 24 hours.

12. Petitioner trial attorney did not do any investigations. Exhibt D

13. Petitioner trial attorney did not hold a suppression hearing or evidence hearing.

14. Petitioner trial attorney did not file appropriate motions.

15. Petitioner's trial attorney did not object appropriately. Exhibt A, H.

16. Petitioner's trial attorney was not prepared for trial. Exhibt E

17. Petitioner's trial attorney did not file motions to obtain discovery and all evidence the DA and Police Deparment had. Exhibt I

18. Petitioner's trial attorney allowed hearsay to be admitted during the trial. Exhibt B, H

19.  Petitioner's trial attorney did not allow Petitioner to have witnesses on Petitioner behalf as Petitioner wanted witnesses.

20.  Petitioner's trial attorney as enclosed letters will show was contacted  by Petitioner in order to obtain infor- about the charges, dates, times, places, etc., and  her re- ponses were she will notify Petitioner of her findings as soon as she completed her review. Petitioner was never notified of the findings. ( letters enclosed Exhibt A, B, and C).

21.  Petitioner's trial attorney was informed of the still shot photo that Detective Roberts had shown Petitioner during the interrogation.  The trial attorney did not obtain them as evidence and they never made it to court.  Petitioner informed the detective that the person who he was pointing to as Petitioner was not Petitioner, if he would look at the picture he could see it was not Petitioner.  The still shot photo was of two black females and a white elderly lady. This information was passed to all three paid attorneys. The picture would have vindicated Petitioner.

22.  Petitioner's trial attorney did not object appropriately to leading questions or have evidence presented to the court when she had the opportunity too.  One of the victims Ms. Carol Ray, mentioned the still shot phot, during the DA questioning her.  Petitioner trial attorney, the prosecutor, or the court had them prodcued to the jury as evidence. Ms. Ray stated this twice during her questioning.  The Da ignored it everytime.

23.  Petitioner's trial attorney was fired immediately after the conviction.  The Petitioner was forced to sit through a trial afriad to say anything with threats of being charged with contmep.    Exhibit 3  Petitioner wrote notes but they were ignored by trial attorney.

Petitioner trial attorney was not prepared as enclosed Motion to Continue states.  She was informed of the trial by a return telephone call from the prosecutor.  According to her letter, she had not been notified of a schedule trial date until the prosecutor returned her call and it was rescheduled. This date or any date was given to the Petitioner.  Petitioner was notified of the trial less than 24 hours, no preparation.

Trial counselor was ineffective in objecting to leading statement made by the prosecutor as he pointed to the photo line-up during Ms. Ray questioning.

Trial counselor was ineffective in objecting and having the still shot photo presented to the court when the victim mentioned them during her questioning.

Trial counselor was ineffective in asking detective Roberts questions relating to the still shot photo, videos tapes, and DNA relating to the crimes.

Trial counselor was ineffective in not being prepared for trial as her motion to continue states dated August 10, 2005. Exhibit 2

Trial counselor was ineffective in not allowing Petitioner to testify, have witnesses and give an alibi even thou Petitioner begged counselor to let her testify.

Trial counselor was ineffective in not having an evidence hearing, suppression hearing, submitting motions to obtain evidence, discovery, witness statements, investigating, etc.

Trial counsel was ineffective as she did not prepare Petitioner for trial. Petitioner was notified less than 24 hours of the trial.

Prosecutor before the trial pointed the Petitioner out to one of the victims, and later put Ms. Ray on the stand and asked the victim did she see the lady in court today and what was she wearing.

Prosecutor did not allow Ms. May to review the tapes as her letters confirmed he had survillance tapes of the crimes that never made it to court. It was the duty of the prosecutor to turn over all favorable evidence.

Trial counselor had an obligation to investigate and prepare the case for court. To discharge her duty faithfully. To ensure that Petitioner was aware of all charges and confront witnesses. Trial counselor did not. Exhibit A, b.

24.  Petitioner was represent at trial by Attorney
Cynthianter May. Sentencing/first appeal attorney Thomas
Goggans.  Final appeal attorney Richard Keith.  Prosecutor
Brandon Hughes.  Court appointed attorney Winston Durant.

25.  Petitioner sentencing attorney failed to let Petitioner
review presentence report before sentencing; did not file
a motion for new trial; did not do any investigation as
requested by Petitioner; He allowed Petitioner initial appeal
to be dismissed because he failed to pay the docket fees and
prepare the forms to the court of criminal appeal; He waited
87 days to submit the motion for acquittal, when he was
fired;  He failed to keep Petitioner abreast of the status of
the appeal and appeal bond, etc.  Exhibit F

26.  Petitioner's appeal attorney Richard Keith, failed
to include in the appeal all of the many ways the trial
attorney was ineffective, even when he was asked by Petitioner
to include them.  He stated afterward he was saving them
to file a Rule 32, which would require an additional fee.
Attorney Keith filed a fraudulent motion to the court with-
out Petitioner permission, and did not informed Petitioner
of his actions.  Petitioner's husband paid Attorney Keith
his asking fee of $4,000 to file the appeal.  The fee included
the cost for the transcript, dockett fees, and his personal
service fees on November 21, 2005.  On January 23, 2006 he
submitted a Motion to Proceed Informa Pauperis on Apppeal.
It was approved by Judge Hobbs on January 24, 2006. He
intentionally left out valid grounds in the appeal that
would have resulted in a different outcome.  He promised to
conduct investigation, but later quoted after he was paid
it would be an additional $500 an hour, for him to do investi-
gation.

A complete detail of how this case has went is enclosed as I
have written 60 minutes, America Most Wanted and Date Line
Television soliciting their help as I am not quilty of
these crimes.  Enclosed is a copy of the letter that was
to each of them.

27. The conviction and sentence under which Petitioner is serving time are unlawful, unconstitutional, and void because of the violation of Petitioner's forth, fifth, sixth and fourteenth amendment right to due process.

28. Petitioner filed a motion for retrial and it was denied.

29. Petitioner's Trial attorney 's representation fell below an objective standard of reasonableness if it had not been for counsel's unprofessional errors the result of the proceeding would have been different. Trial attorney did not put on any defense on Petitioner behalf.

30. Trial attorney has a duty to conduct both factual and legal investigation on behalf of his client and that the failure to conduct such an investigation and present the evidence that would have been disclosed amounts to ineffective representation by counsel as stated in several cases such as:

Coles v. Peyton 389; McQueen v. Swenson, 498 F. 2d 20; US V. Decoster, 487 F. 2d.

Trial attorney has a duty to make reasonably investigation to conduct adequate pretrial discovery as stated in "kimmelman v. Morrison (1986, US) 91 L Ed 2d 305, 106 S Ct 2574, Infra 10.

Supreme Court found that defense counsel's representation was constitutionally deficient in that he failed to timely move for suppression of certain evidence, which was ultimately due to his failure to conduct adequate pretrial discovery.

According to two enclosed letters from Attorney may the prosecutor had surviellance tapes and she did not get to reveiw before the trial and she had a duty to ensure that the all favorable evidence be presented to the court, as Petitioner husband had requested to review the tapes with Attorney May.

An attorney is expected to take professional responsibility for the conduct of a case after consulting with his client, the Supreme Court held, except for certain decisions which must be made by his client; the plea to be entered, to waive jury trial, whether the client will testify.

31. Due Process of law requires fair notices that one's conduct is subject to a law or regulation as stated in Brooks v.Alabama State Bar, 574 So. 2d 33

IT IS THE RIGHT OF THE IMPERATIVE DUTY OF THE COURTS TO
SEE THAT THE RIGHTS OF AN ACCUSED ARE NOT TAKEN AWAY FROM
HIM. Bradley v. State, 215 Ala. 140, 110 So. 162 (1926)


FROST V. STATE, 225 Ala 232, 142 S. 427 (1932)
A prisoner accused of felony, must be arraigned in person and
must plead in person; and in all subsequent proceedings, it
is required that he shall appear in person.

Trial Courts can be trusted to see that every man brought
before them, charged with crime, shall have that full measure
of protection guaranteed to him by Amend 6 of the Constitution
Gilchrist v. State, 234 Ala 73, 173 So. 651 (1937).
Wray v. State, 154 Ala. 36 45 So. 697 (1908)

Rule 4.4 Initial Appearance
(b) Felonies charged by complaint when a defendant's charged
by complaint with commission of a felony, the Judge or magistrate
in addition to the procedures required by section (a) shall:
(1) inform the defendant of the right to demand a preliminary
hearing and the procedure by which that right may be exercised
and (2) If so demanded, set tthe time for a preliminary
hearing in accordance with Rule 5.1 of Alabama Rules of Court
2006.

Herbert v. Louisana, 272 US 312, states the duty of the state
court to protect constitutional rights and and they are under
obligation to guard and enforce every right secured by the
Federal Constitution.


The Constitution of Alabama 1901, Section 6. Fair Trial
Procedures states "That in all criminal prosecutions, the
accused has a right to be heard by himself and counsel, or
either, to demand the nature and cause of the accusation;
and to have a copy thereof, to be confronted by the witnesses
against him; to have compulsory process for obtaining
witnesses in his favor; to testify in all cases, in his own
behalf, if he elects so to do; and, inall prosecutions by
indictment, a speedy, public trial, by an impartial Jury
of the county or district in which the offense was committed;
and he shall not be compelled to give evidence against
himself, nor be deprived of life, liberty or property,
except by due process of law.."

Petitioner was denied Petitioner rights to a Fair Trial in
accordance to Alabama State Constitution of 1901, US
Constitution, Federal and Statutory Laws due to the acts
of the court appointed attorney, trial attorney, sentencing/
appeal attorney and final appeal attorney, the court,
prosecutor and the detective who handle the case.

Petitioner fourth, fifth, sixth fourteenth, etc., was violated

Prosecutor has a constitutional duty to volunteer matter to the defense if the evidence would create a reasonable doubt as to the guilt of the accused., Jones v. Shankland, 800 F 2d 77, 80 (6th Cir 1986)

Giglio v. United States (1972) 405, US 150 3L LFD 2d 104, 92 87 2d pg 802.. Prosecutor's duty under due process clause of the fifth amendment to disclose evidence to the accuse.

People v. Nikollaj, 155 Misc. 2d 642, 589 N.Y. S 2d 1013 (sup Ct. Queens County 1997) Prosecution's withholding of Rosario material prejudiced defendant's case and a reasonable probability existed that the violation contributed to the verdict.

Alabama Cr AP 1981 Photographs in nature of Mug shots should not have been admitted in face of proper objection where they indicated that defendant had a criminal record. Attorney May did object but her objection as overruled.

The Prosecutor submitted to the court photographic line-up from which eye witnesses initially identified the defendant was impermissibly suggestive the burden was on the prose-cution to show that the in-court identification had an independ-ent basis of reliability. The prosecution did not meet this burden where the evidence regarding reliability of eye-witness's identification was conflicting. Where based on all facts and circumstances involved, the suggestiveness of the photographic line-up coupled as it was, with evidence indicating a lack of reliability, there was a very substantial likelihood of irreparable misindentification; in-court identification of the defendant should have been suppressed.

Error in law if the court rule that evidence is admissible when it should have been ruled inadmissible.

All evidence the Prosecutor had was not provided to the defendant such as the still shot photos, video tapes of the crimes with the actual persons, DNA Detective Roberts stated he had, original complaints filed by the victims, etc.,

Upon Prosecutor witness mentioning the still shot photo (enclosed) Prosecutor ignored her comment.

Dickerson V. Foss 692 F. 2D   Accuracy of the witness prior description of the criminal the length of time between th crime and the confrontation.  No confrontation was made available to Petitioner.

8

**POINTS AND AUTHORITIES IN SUPPORT OF
PETITION FOR WRIT**

Rena D. Stinson, Pro Se, the Petitioner in this case
was indicted by a Montgomery County Grand Jury on July 9,
and charged with three counts of first-degree theft of
property in violation of Section 13A-8-3 of the Code of
Alabama (1975) and one count of second-degree theft of
property in violation of Section 13A-8-4 of the Code
of Alabama (1975) on December 20, 2004, an arraignment was
held.  Petitioner was not notified.  The court appointed
Attorney Winston Durant represent Petitioner.  Attorney
Durant upon his appointment waived Petitioner presence to
the arraignment on that same date.  The court nor Attorney
Durant notified the Petitioner of this action.  Petitioner
was not contacted to sign a waiver, etc.,  The result of this
was Petitioner was not arraigned, entered a plea or had an
opportunity to a Preliminary hearing.

On April 26, 2005, a court date was set for the Petitioner
The Petitioner was picked up suddenly from Julia T. Prison
where Petitioner was serving a 10 split 18 months sentence
for writing checks due to a past gambling addiction on
Petitioner on personal and business accounts.  She was
informed by the deputy she had a court date before the Judge.
Petitioner never made it to that court date because Petitioner
blanked out while at the county jail and hurt her shoulder,
sprung her shoulder, dislocated her teeth, broke a tooth, and
hurt her head.  Petitioner was rushed back to Julia because
the county refused to treat her or take her to the Emergency
Room.  Upon arriving back at Julia she was taken to the
Montgomery, Baptist Hospital and treated. Petitioner husband
at this point contacted Attorney Cynthianther May to represent
Petitioner and to obtain information about what was Petitioner
being charged with.

On May 2, 2005, Ms. Cynthianther L. May. entered a notice
of appearance on behalf of Stinson.

on August 15, 2005, according to information contain on

9

Ms. May Motion to Continue that she submitted on August 10, 2005, there was another court date set for a trial on August 15, 2005, whereas Ms. May found out from a returned telephone to the Prosecutor Brandon Hughes; She had called him I am assuming in regards to reviewing the tapes he had regarding the crimes, since her enclosed letters mentioned Ms. May was waiting on the Prosecutor to get back with her, for a time for her to review them and Petitioner husband had requested to be present at the viewing.

August 18, 2005, Petitioner was suddenly picked up by the county to appear in court. Petitioner upon arrival contacted Petitioner husband to contacted Attorney May to find out what was the purpose of the court hearing. Ms. May came to the Montgomery County Jail, on Sunday, August 21, around 4:30, to informed Petitioner that she was having a trial the next day. Attorney May left word for the county to allow Petitioner to dress for court. Petitioner asked many questions but received few answers. Petitioner was informed not to worry, Ms. May had everything under control. Petitioner asked had she obtained the still shot phot that the detective had shown Petitioner during the interrogation, and Petitioner had informed the detective that the person he was pointed to if he would look at it, now that he had met me he could see it was not me. She said "no" it will more than likely be in court. But it was not!"

Petitioner had wrote Ms. May two letters after her initial visit on May 12, 2005, at Julia Prison concerning the charges, time, dates, places, etc. I had informed Ms. May of the interrogation Petitioner had and the communication that was exchanged, whereas I was threaten, cused even after telling the detective he had the wrong person and the picture was clear enough to see that of the offenders at the crime scene. As the detective stated the crime invloved two black females and one black male. They wanted information that I did not know about or could give them. A couple of days later, Petitioner name appeared in the newspaper, on TV and on the radio being accused of the crimes of film flaming elderly ladies out of their money. Exhibt A, B,

10

Ms. May never got back with Petitioner after her initial visit at Julia Prison, regarding the charges, etc. Ms. May letters will confirmed as of August she had not finished her review of the files or done any investigation, file appropriate motions, got with Petitioner about the charges, prepared Petitioner for court by allowing Petitioner to give an alibi, have witnesse, evidence hearing, etc. *Exhibit A, B*

On August 22, 2005, the trial court granted the State's motion to nolle pros count three of the indictment.

On August 23, 2005, the jury found Petitioner quilty of the charges. Ms. May did not put up any defense. The jury wanted information about the still shot photo. Victim Carol Ray mentioned the still shot photo during her questioning. Petitioner attorney, the court or the prosecutor did not have the photo presented to the jury upon her mentioning the picture. The Prosecutor ignored her statement. The Jury wanted original descriptions that was given by the victims when the crimes took place. The Jury wanted more information about hearsay that was allowed regarding the detective statement" A fellow officer was at the county jail and saw Petitioner and called Petitioner name into him". Petitioner attorney did not object or asked any questions relating to this hearsay statement. The Jury was denied all their requests from the court, prosecutor, and Petitioner attorney.

Petitioner was sentenced to a 20 split 5 years and five

On August 24, 2005, Petitioner fired Ms. May immediately after the conviction.

On August 31, 2005, Petitioner  obtained the service of of Attorney Thomas Goggans. He was hired to do an appeal, to attend sentencing hearing and file motions for a retrial, an acquattal, to obtain an appeal bond, to submit an appeal,etc. Attorney Goggans was also informed of the evidence at the police station. He did not do any investigation as he had agreed upon accepting the case or file a motion for retrial.

On October 24, 2005, a sentencing was set. Petitioner was not allowed to review the presentence report before the sentencing, as the Prosecutor was making changes to it during

the court hearing.   Judge Hobbs asked Attorney Goggans did he
want a formal hearing he quickly stated 'no" without consulting
Petitioner.   Upon reading Alabama Rule of Court 2005, this would
have been an opportunity to have the tapes, photo presented
to the court and identify all the ways the trial attorney was
ineffective; as well as Petitioner was denied her right to Due
Process of law could have been investigated as Mr. Goggans had
been informed about Petitioner was not allowed to testify,
have witnesses, give an alibi, never entered a plea, etc.

During the sentencing was Petitioner first opportunity
to speak to the court.   During the entire trial Petitioner
was not asked any questions by the court, the prosecutor, or
her attorney.   Petitioner had been informed to not say a word
unless asked during the trial.   Petitioner had wrote the court
called the court and was unsuccessful.   Petitioner informed
the judge during the sentencing that she had not been arraigned,
entered a plea, had a preliminary hearing, could not testify,
was not allowed to have witnesses, etc.

Judge Hobbs asked the prosecutor had Petitioner been
arraigned, he stated yes on December 20, 2004. The case action
summary sheet also showed Petitioner presence was waive and
only an attorney was apppointed.   He did not reveal that infor-
mation to the Judge.

Petitioner was not given an opportunity to review the
presentence report before the hearing.   Attorney Goggans stated
all during the sentencing he would file motions, we will deal
with that a a later date, etc.   He failed to file the motion
relating to Petitioner Due Process, Constitutional violations
 both U.S. and Alabama.   (enclosed documentation give details
of his errors.)   Exhibit E.


Petitioner was sentenced to 20 split five years in prison
and five years probation.   Petitioner was denied an appeal bond.

Attorney Goggans allowed Petitioner appeal to be dismissed
because he did not pay the docket fees, or prepare the forms
to the Court of Criminal Appeal.   He was paid his asking  fees
that included the fees for the transcript, and docket fees.
On November 16, 2005, the court of appeal dismissed the appeal.
 Exhibit F.

Judge Hobbs never asked Petitioner if she was satisfied
with her attorney representation!

Attorney Goggans failure to keep client abreast, failure to
file appeal and motions as promised resulted in him being
fired.

November 21, 2005, Petitioner obtained the service of
Attorney Keith by paying his asking fees for his personal
service, the transcript, docket fees, etc. He had agreed
agreed to take the appeal days before he was paid. He
contacted Attorney Goggans as well to let him know Petitioner
had obatined his service. On this date of November 21, 2005,
Attorney Goggans submitted his first and only motion. He filed
a motion of acquittal half heartedly to keep from having to
pay Petitioner money back. This motion for acquittal was
done 87 days after the conviction.

December 6, 2005, Attorney Keith motion to the Court of
Criminal Appeal to have the appeal reinstated, and paid the
fees and submitted his notice of appearance.

Attorney Richard Keith had been briefed and informed of
everything that had transpired regarding Petitioner cause.
He was advised of all the trial attorneys mistakes, as well
as the sentencing/appeal attorneys mistakes.

Attorney Keith was communicating with Petitioner husband
during this time on a regular basis. Petitionere did not get
to talk again with Attorney Keith after his initial visits at
the county jail. Petitioner wrote and forward case laws,
information Petitioner obtained from law books about cases
relating to her situation, Constitutional violations, etc.

Attorney Keith submitted the appeal without any regards
to Petitioner requests in writing to include ineffective
assistance of counselor, hearsay, still shot photos, no evidence
hearing, etc. Even when asked to do so by Petitioner husband
he insisted he could not include them in the original appeal.

Attorney Keith stated after the appeal was filed that we was
going to file a Rule 32 next and it would require an additional
payment of $2,500 minimum.

According to Alabama Rule of Court 2005, Attorney Keith could have included all of the above items in the first appeal and it would have resulted in a different result.

Upon realizing this information, Petitioner contacted the court of Criminal Appeal and submitted a Motion for "Help and Mercy." The court of Criminal Appeal wrote Petitioner back and stated that Judge Hobbs had approved Petitioner indigent status and as long as Attorney Keith was Petitioner attorney, Petitioner needed to address Petitioner concerns to him. Exhibit F, G

Attorney Keith submitted a fraudulent document to the court. He was paid his fees that included the cost of the transcript for the appeal, docket fees, and his personal service fees.

The Court of Criminal Appeal Affirm the conviction.

It was at this point that Petitioner wrote a letter to the court that Petitioner was Pro Se due to all the issues relating to ineffective assistant of counselors.

On October 3, 2006, Petitioner received a letter from the court of Criminal Appeal granting Attorney Keith motion to withdraw.

Petitioner submitted an application for rehearing and it was overruled.

Petitioner submitted a Petition for Writ of Certiorari it was dismissed due to untimely. Petitioner was not aware of the process for timely mailing. Petitioner request for reinstatement was denied.

Petitioner now comes before this court for mercy in this cause.

Wherefore, Petitioner Rena D. Stinson moves the Honorable court to grant the following relief:

a)  Accept jurisdiction over this case;

b)  Allow Petitioner an appeal bond to obtain the Discovery in this case and all the evidence that was collected such as the still shot photo, video tapes, DNA report that was not provided during the trial;

c)  Require Detective Jason Roberts to bring forth all the evidence that was obtained during the investigation, such as surviellance tapes, still shot photo, DNA report, original descriptions given when the crimes was committed, witnesses statements given at the crime scene, etc.

d)  Order an evidentary hearing;

e)  At the evidentary hearing, find that Petitioner was denied her rights under the U. S. Constitution, Alabama constitution Federal and Statutory Laws;

f)  Upon reviewing all evidence that was obtained and it confirm Petitioner innocent once reviewed and inspected Issue a conditional writ of Habeas ordering this court will grant a Writ of Habeas Corpus unless the State orders a new trial;

g)  Issue a Writ of Habeas Corpus freeing Petitioner from her unconstitutional confinement and probation.

Respectfully Submitted

*Rena D. Stinson*
Rena D. Stinson

Done This __28__ Day of __January__ 2007

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Oct 25, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

Notary

15



# IN THE SUPREME COURT OF ALABAMA

December 11, 2006

**1060338**

Ex parte Rena Dorsey Stinson.  PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS (In re: Rena Dorsey Stinson, alias v. State of Alabama)   (Montgomery Circuit Court: CC04-1694; Criminal Appeals : CR-05-0182).

## <u>ORDER</u>

The petition for writ of certiorari having been dismissed on December 1, 2006, as untimely filed,

IT IS ORDERED that the petitioner's motion to reinstate the petition for writ of certiorari is denied.  See Rules 2 and 26, Alabama Rules of Appellate Procedure.

I Robert G. Esdale, Sr., as Clerk of the Supreme Court of Alabama, do hereby certify that the foregoing is a full, true and correct copy of the instrument(s) herewith set out as same appear(s) of record in said Court.

Witness my hand this _11th_ day of _December  2006_

Clerk, Supreme Court of Alabama

cc:
Rena Dorsey Stinson, Pro Se
Hon. Troy R. King, Attorney General
Hon. Audrey Jordan, Asst. Attorney General

16

*Exhibt I*




```
ACR0372              ALABAMA JUDICIAL INFORMATION SYSTEM     CASE: CC 2004 001694
OPER: REG                    CASE ACTION SUMMARY
PAGE:   1                    CIRCUIT  CRIMINAL                RUN DATE: 12/14/2
```

IN THE CIRCUIT COURT OF MONTGOMERY                                    JUDGE:

STATE OF ALABAMA                    VS       STINSON RENA
                                             2265 EAST ABERDEEN DRIVE
CASE: CC 2004 001694.00
                                             MONTGOMERY, AL  36116 0000

DOB: 10/15/1953          SEX: F  RACE: B  HT: 5 05  WT: 165   HR: BLK  EYES: B
SSN: 424782955  ALIAS NAMES: RENA DORSEY

CHARGE01: THEFT OF PROP 1ST     CODE01: TOP1   LIT: THEFT OF PROP   TYP: F #: 0
CHARGE02: THEFT OF PROP 1ST     CODE02: TOP1                        TYP: F #: 0
CHARGE03: THEFT OF PROP 1ST     CODE03: TOP1                        TYP: F #: 0
CHARGE04: THEFT OF PROP 2ND     CODE04: TOP2                        TYP: F #: 0
OFFENSE DATE:                            AGENCY/OFFICER: 0030100

DATE WAR/CAP ISS:                        DATE ARRESTED:
DATE    INDICTED: 07/09/2004             DATE    FILED: 12/14/2004
DATE  RELEASED:                          DATE  HEARING:
BOND    AMOUNT:     $80,000.00           SURETIES:

DATE 1:                   DESC:                TIME: 0000
DATE 2: 12/20/2004        DESC: ARRG           TIME: 0830 A

TRACKING NOS: GJ 2004 070062 00  /
                                                    / AIS 234171
DEF/ATY: ~~Winston Durant~~    TYPE: A
         C. May          00000 *Jaggens*                     TYPE:

PROSECUTOR: B. Hughes                                  *Aug*
                                                       *May*

```
=================================================================================
OTH CSE: GJ200407006200 CHK/TICKET NO: S              GRAND JURY: 62
COURT REPORTER:              SID NO:        001361646
DEF STATUS: JAIL             DEMAND:                           OPER: REG
```

DATE        ACTIONS, JUDGEMENTS, AND NOTES

12-20-04 | W. Durant appeared; Δ's presence
         | waived
         |              TMH
4-26-05  | Still at Doc due to illness
         |              TMH
5-2-05   | Cynthiather May, notice of
         | of appearance, counsel of record
         | **JUDGEMENT IS HEREBY ENTERED**
         | **IN ACCORDANCE WITH THE**
         | **VERDICT OF THE JURY,** guilty of TOP¹ x2, TOP²,
         | _____ Sentencing set 9-19-
         | **Circuit Judge**                @ 8:30



IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

STATE OF ALABAMA
   Plaintiff,

v.

RENA STINSON
   Defendant.

CASE NO. CC 2004-1694

## MOTION TO CONTINUE

COMES NOW, the Plaintiff, **RENA STINSON**, by and through her attorney of record, CYNTHIANTHER L. MAY and files this *Motion to Continue* in the above-referenced matter and will show unto the Court the following:

1. This matter is set for trial on August 15, 2005.

2. Counsel has relocated to Mobile County, Alabama ; in June 2005, prior to counsel's relocation, said counsel notified the Court of her relocation via U. S. mail.

3. On July 7, 2005 or thereabout, counsel contacted the Court via telephone and received verification of the Court's receipt of counsel's relocation letter.

4. Counsel was not notified by the Court, of Mrs. Stinson's status or trial date.

5. Counsel became aware of Mrs. Stinson's court dates after receiving a return phone call from Brandon Hughes, the prosecutor.

WHEREFORE, the premises considered, the Defendant prays that this Honorable Court will set this matter to a later date, which will allow time for defendants transport and counsel preparation for trial.

Respectfully submitted this the 10th day of August, 2005.

CYNTHIANTHER L. MAY (MAY039)
Attorney for Defendant

OF COUNSEL:
**COCHRAN LAW FIRM P.C.**
401 Church Street
Mobile, Alabama 36602
Telephone: (251) 433-6500
Facsimile: (251) 434-9995

18

Exhibt 3

FROM CARTER LAW FIRM                    (WED) SEP 21 2005 23:11/ST. 23:10/No. 6818361773 P 3


## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

STATE OF ALABAMA                    *
    Plaintiff,                          *
                   *
v.                                  *        CASE NO. CC 2004-1694
                   *
RENA STINSON                        *
    Defendant.                          *

### MOTION TO WITHDRAW

    **COMES NOW** Cynthianther L. May and respectfully moves this Honorable Court for leave to withdraw as counsel for Defendant, RENA STINSON, and as grounds therefore would show the following:

    1. Counsel has been notified that the above-named defendant has retained alternative legal representation.

    **WHEREFORE,** the premises considered, counsel prays that the Court will grant this motion.

    Respectfully submitted this 21st day of September 2005.

                   CYNTHIANTHER L. MAY (MAY 039)

OF COUNSEL:
COCHRAN LAW FIRM
401 Church Street
Mobile, Alabama 36604
Telephone (251) 433-6500
Facsimile (251) 434-9995

19



*CLM CARTER Law Firm,*

JEROME C. CARTER, ESQ.
CYNTHIANTHER L. MAY, ESQ.
ASSOCIATE

May 23, 2005

Rena Stinson 234171
Tutweiler Correctional Facility
8966 US Hwy 231 N
Wetumpka, AL 36092

RE:  **STATE OF ALABAMA v. RENA STINSON**

Dear Mrs. Stinson:

      In accord with our conversation of May 12, 2005, you have chosen not to accept the District Attorney's plea offer of a 20 split 5. I am in the process of reviewing all information received from Attorney Winston Durant. I will notify you of my findings once I have completed my review.

      If you any questions please contact me at the telephone number and/or address above.

      I am, with warm

                Regards,

                CYNTHIANTER L MAY
                For the Firm

CLM/mmh
cc:  Louis Stinson

207 MONTGOMERY STREET, SUITE 609, MONTGOMERY A~

*(17)*

20

Exhibt B



**CLF | CARTER** *Law Firm,*

JEROME C. CARTER, ESQ.
CYNTHIANTHER L. MAY, ESQ
ASSOCIATE

June 15, 2005

Rena Stinson 23417
Tutweiler Correctional Facility
8966 US Highway 231 North
Wetumpka, Alabama 36092

Dear Mrs. Stinson:

   I write in response to your letter dated June 7, 2005. I empathize with your current situation. Please know that we are hard at work on your behalf. Upon my completed review of your file from Attorney Durant's office, I will contact you.

   If you have any questions or concerns, please contact me or my legal assistant, Lisa, at the telephone number and / or the address above.

With warmest regards,

Cynthianther L. May
For the Firm

cc: Louis Stinson

(2)

207 MONTGOMERY STREET, SUITE 609, MONTGOMERY, ALABAMA 36104

21

Exhibt C

# THE COCHRAN FIRM
### M O B I L E

## COCHRAN, CHERRY, GIVENS, SMITH, LANE & TAYLOR, P.C.

401 CHURCH STREET • MOBILE, ALABAMA 36602
TELEPHONE: (251) 434-9992 • FAX: (251) 434-9995
WWW.COCHRANFIRM.COM

JOHNNIE L. COCHRAN, JR.[2,6,7,8,10]
*CHAIRMAN*

SAMUEL A. CHERRY, JR.[1,8,10]
J. KEITH GIVENS[1,3,4]
JOCK A. SMITH[1,6,8,10]
JOSEPH D. LANE[1,5]
J. FARREST TAYLOR[1,9]

ALABAMA LICENSED ATTORNEYS
LAWRENCE FICKETT
LARRY GIVENS[1,*]
CHRISTY L. HAYES
TERRY KEY
ANGELA MASON[1,4,10]
B. SHANNON SAUNDERS[1,55]
LANCE SWANNER
CARL E. UNDERWOOD, III

ALABAMA 1
CALIFORNIA 2
FLORIDA 3
GEORGIA 4
MISSISSIPPI 5
NEW YORK 6
OHIO 7
TENNESSEE 8
VIRGINIA 9
WASHINGTON, D.C. 10

July 13, 2005

Mrs. Rena Stinson
6624 Stable Gate Court
Montgomery, Al 36116

RE:  CASE STATUS

Dear Mrs. Stinson:

This letter is to inform you of the status of your case to this date. The District Attorney, handling your case informed Ms. May, that he has the surveillance tape from the ~~store~~. I am in the process of scheduling an appointment for Ms. May to view said tape. After she have viewed the tape she will contact you to let you know what actions she will take next.

Should you have any questions, please contact me at the above-referenced number.

I am, with warmest

Regards,

Marsha Campbell
Legal Assistant to Cynthianther L. May

22

13?

ATLANTA • BIRMINGHAM • CHICAGO •

Ex Hibt D

# THE COCHRAN FIRM
## MOBILE

401 CHURCH STREET • MOBILE, ALABAMA 36602
TELEPHONE: (251) 434-9993 • FAX: (251) 434-9995
WWW.COCHRANFIRM.COM

August 5, 2005

Mr. Louise Stinson
6624 Stable Gate Court
Montgomery, Alabama 36116

RE: ATTORNEY FEE

Dear Mr. Stinson:

Enclosed please find a receipt for the payment you made in the amount of $350.00, this leaves you with a zero balance. Per our conversation on Friday, August 5, 2005, as soon as Attorney May receives an appointment to view the surveillance tapes, I will notify you to let you know if it is possible for your to sit in for the viewing.

If you have any questions you may contact me at the telephone number/address listed above.

I am with warmest,

Regards,

COCHRAN, CHERRY, GIVENS,
SMITH, LANE & TAYLOR, P.C.

Marsha Campbell
Legal Assistant to Cynthianther L. May

Enclosure

(4)

23

ATLANTA • BIRMINGHAM • CHICAGO • DALLAS • ...

FANUT — E

Rena D. Stinson        Page 1  11/11/2006

My name is Rena D. Stinson. I am an inmate at Birmingham Work Release Center
serving time for crimes that I did not commit.

The purpose of this letter is to ask for your help in bringing to justice the person(s) who
committed these crimes against elderly ladies.  These crimes involved two African-
American females and one African-American male, flimflamming elderly ladies out of
their money.  One victim was taken for $9,000.00.

My situation is probably one of the most unusual you will find because every aspect of
the Justice System failed me.  I will tell you exactly what I mean:

- While I was being interrogated for these crimes, Detective Jason Roberts of the
  Montgomery Police Department showed me a set of photos.  One of the photos
  had two African-American females and one Caucasian female.  This picture was
  supposedly the picture of one of the victims with the two females involved in the
  crimes.  Then, he showed me a photo line-up of six pictures of which one was a
  blown-up picture of me.  When he placed the pictures in front of me, it was
  obvious that I was not any of the women on the first photo.  I stated to him
  emphatically that it was not me, nor did it even look to be me in the pictures.  He
  looked at the photos and put them down.  Then, he proceeded to curse, threaten,
  and call me lies.  In addition, he offered me less time in prison to admit to the
  crimes.  If not, he said that I would never see the streets of Montgomery again.
  The picture with the victim and the two ladies never made it to court.  Detective
  Roberts lied on the witness stand during the trial.  The reason that my photo was
  able to be obtained for line-up was the fact that I was serving an 18-month
  sentence for writing checks on my personal and business accounts as a result of a
  gambling addiction.
- The court-appointed an attorney to represent me on December 20, 2004.  I was
  never notified of the court date or told that I had been appointed an attorney.  I
  never received any correspondence from the court in regards to this court
  appearance or any other court appearance.  I was notified in less than 24 hours
  that I would be going to trial.  I never appeared before the judge for an
  arraignment, preliminary hearing, or to enter a plea.  The court-appointed
  attorney waived my presence on December 20, 2004.  According to the case
  summary sheet, the same date is identified as an arraignment.  However, I was not
  notified because I was in prison serving time for writing checks.
- During the month of April 2005 approximately around the 22nd, I was taken all of
  a sudden by the Montgomery County Sheriff to Montgomery.  While riding, the
  deputy informed me that I had a court date scheduled.  I inquired about the exact
  date, as well as the reason for the scheduled court appearance.  However, he did
  not have all the details.  On the following Saturday after arriving in Montgomery
  County, I went blank and hit my head, chipped a tooth, and sprung my shoulder.

1

~ ~~~ / / ~

Rena D. Stinson*    Page 2 11/11/2006

Instead of providing medical care, I was immediately rushed back to Julia Tutwiler to keep from having to pay the cost to take me to the Emergency Room.

- They denied me medical care!   Therefore, I never made it to court to see exactly what was happening.
- As a result of not knowing why the court date was scheduled, my husband hired an attorney, Cynthianther L. May, to represent me because I still was not aware that I had been appointed an attorney by the courts.   The trial attorney was ineffective in so many areas and did not ensure my due process of the law, as well as my constitutional rights of Alabama and the United States.  I am currently in prison as a result of her inaction prior to trial and during trial.  The following are ways in which Attorney May was ineffective during my trial, as well as prior to appearing in court:
    - She did not file any motions on my behalf.
    - She did not do any investigations of the photos or DNA evidence that the police officials stated that they had in their possession.
    - She was not prepared for trial.
    - She did not file a motion to obtain discovery.
    - She did not have an evidentiary hearing.
    - She allowed hearsay to be admitted during trial.
    - She did not object appropriately nor have matters suppressed.
    - She did not let me testify, and I pleaded with her to allow me to testify on my behalf.
    - She would not allow me to have witnesses or tell where I was at the time.
    - She notified me of the trial less than 24 hours before the scheduled trial date.
    - The jury wanted more information during their deliberations, but they were denied it.  They wanted to see actual pictures.  They wanted to see the original police report identifying the person who committed the acts. They wanted to see more information about the statement that Detective Roberts made concerning someone seeing me and calling him to give my name as a suspect.
    - All of this information was valuable to my defense, but the jury was denied it by the court, the prosecutors, and my attorney.
    - I was told be quiet and say nothing unless I was asked.   I was threatened with charges of contempt, and I did not need anymore problems.
    - I wrote questions that I wanted her to ask the victims, and she refused. She would pat my hand and state that she had it under control.   Then, she would tell me to, "be quiet."
    - She was fired immediately after the conviction because I was found guilty. She did not work on my behalf at all.

2

Exhibit 1

- Then, my husband hired attorney number two, Thomas Goggans. He was hired to continue what Attorney May did not complete. He did not complete for what he was hired. Currently, my husband is trying to obtain a refund of what we paid him because he did not complete what he paid to do.
  - ➢ He did not investigate the photos of which he was informed.
  - ➢ He did not let me review the pre-sentencing report before the hearing.
  - ➢ He did not allow me to have a formal sentencing hearing to present evidence before the judge that was not presented at trial.
  - ➢ He did not file a motion for Retrial.
  - ➢ He filed a motion for acquittal 87 days after the conviction, only because he knew we had hired another attorney.
  - ➢ He stated during the sentencing that he would file certain motions, but he did not file motions relating to my arraignment, preliminary hearing, and not entering a plea.
  - ➢ He did not keep me abreast of the status of my formal request for appeal bond to the district court or court of criminal appeal.
  - ➢ He allowed the appeal to be dismissed because of his failure to pay the docket fees, nor did he prepare or fill out the necessary forms.
  - ➢ On November 21, 2005 when we paid a new attorney, Attorney Richard Keith, represent us, then Attorney Goggans filed his motion in court.
  - ➢ We later learned that Attorneys Keith and Goggans had and was working on cases together during this time and that it was a conflict of interest for Attorney Keith to have accepted our monies well aware of the problems that we had encountered with Attorney Goggans, as well as allowing Attorney Goggans time to keep our monies and correct his mistakes.

- Moreover, attorney number three, Richard Keith, continued the tradition of ineffectiveness. The following statements speak to some of the ways that he failed me as an attorney.
  - ➢ He did not do any investigation.
  - ➢ He did not go to the police department and get the photos as requested.
  - ➢ He did not submit the appeal as requested with the valid grounds that would have resulted in a reversal. There were so many ways in which both the trial attorney and criminal attorney were ineffective, and he did not include any of them. He submitted the appeal on two weak issues according to Attorney Goggans in his rebuttal to my complaints. The arraignment was barred in Alabama because Alabama does not honor it anymore. In addition, sufficiency of evidence is hard to prove, and it is viewed very lightly with the judges.
  - ➢ He informed my husband that he would like to submit a Rule 32 which would require more money when he could have covered those issues in the original appeal. Therefore, the Court of Appeal upheld the conviction of guilty.

 Exhibit E

Rena D. Stinson*        Page 4 11/11/2006

> Attorney Keith submitted a motion to court without my knowledge asking the courts to approve me for indigence status. This motion was contradictory because he had already been paid for transcript fees. He falsely applied to the court on my behalf without ever informing me of this matter. I have filed a complaint to the Alabama State Bar.
> When he was originally hired, he agreed to obtain the pictures from the police department. After being hired, he informed us that it would be an additional $500.00 per hour to search for the pictures. Of course, we could not afford that fee.
> He did not respond to the Attorney Generals argument nor do an oral appearance before the court as requested. Therefore, the Court of Appeal affirmed the conviction.

- The district attorneys were determined to win a case no matter at whose expense. The following are some of the things that they did at my expense:
  > They withheld favorable information.
  > Prior to trial, one of them went over to one of the victims in the back of court and seemed to carry on a conversation while pointing in the direction where I was sitting waiting for trial to begin.
  > She adjusted her glasses while walking down the aisle and proceeded to look in my direction.
  > Then, when bringing the victim on the stand, he asked her did she recognize Ms. Stinson in the court today and what was she wearing.
  > He did the same thing with the other victims.
  > During the questioning of the victims, one of them actually mentioned the pictures. But, he intentionally ignored her.
  > Also, they did not produce the pictures in court because they are very clear.

- As you can see from the beginning to the end of the trial, everything that could have gone wrong did go wrong.
- Can you help me in the pursuit of finding these ladies and man who swindled these innocent victims out of their savings before it is too late. I want them to know the truth. I want them to know how they have been deceived by the police and the prosecution.

4

Exhibit F

ACR0369  A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R

CASE ACTION SUMMARY
CONTINUATION

CASE: CC 2004 001694.00
JUDGE ID: TMH

STATE OF ALABAMA                    VS    STINSON RENA

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 10-26-05 | Clerk's Notice of Appeal to Crm App, AG, DA, C. May, + J. Shelton — No forms |
| 11/01/05 | Crm Appls # CR 05-0182 |
| 11/16/05 | Cert of Final Judgment of Dismissal |
| 12/14/05 | Docketing Fee Paid — Appeal Reinstated |
| 01/18/06 | Transcript To Crm Appls, AG & Def Atty Password: z9bm1eqf |
| 01/24/06 | Transcript To Atty Richard Keith |
| 01/24/06 | Motion To Proceed In Forma Pauperis On Appeal — Granted |
| 01/04/06 | Motion For New Trial — Denied |

28

Exhibit # 8

78

```
 1         them.  I saw a couple of still shots that the
 2         bank had printed out for me.  Of course, I
 3         just studied those and studied those.  We have
 4         got a data base, a computer that everybody
 5         that gets arrested, brought up there, gets put
 6         in city jail, is brought to us for
 7         questioning.  We take their photograph.  And
 8         put them into a data base.
 9              MR. HUGHES:  May I have a moment?
10    Q.   You were saying you had a data base?
11    A.   Put them in a data base.  Actually put into
12         the perimeters for my search which, you know,
13         you can break it down by black male, sixteen
14         or seventeen years old.  Black female, age
15         perimeters, weight perimeters.  And I got
16         several thousand photos.  And I just sat,
17         took my time and went through all those and
18         developed that way because it matched real
19         close to the still shots.
20    Q.   So who were you able to develop as a suspect
21         after doing all that?
22    A.   Rena Stinson.
23    Q.   That was sifting through photos?
24    A.   Sifting through photos and a fellow detective
25         was dropping somebody off at the county jail
```

29

Exhibt H

79

1    and observed her at the county jail and gave
2    me her name there. *when*
3  Q.  Did you take Ms. Stinson into custody?
4  A.  No, sir, not at this time.
5  Q.  Did you question her?
6  A.  Not at this time.  I did question her after I
7       put her in the photographic lineup.
8          MR. FOREMAN:  May I approach the witness,
9       Your Honor?
10         THE COURT:  Sure.
11 Q.  I want to show you what is marked State's
12      Exhibit 2 and ask you if you can identify
13      this?
14 A.  That's correct.  That's a photographic lineup.
15 Q.  Did you compile that lineup?
16 A.  I did.
17 Q.  What perimeters did you use as far as choosing
18      who would go in that lineup?
19 A.  I just random, no particular order.  Just
20      people same race, same approximate age, *Not True*
21      weight.
22 Q.  So did you base that on the descriptions that
23      you got? *What were the description he sot*
24 (A)  That's correct.
25 Q.  Now, did you show this lineup to any of the

30

Exhibt I

38

```
 1        said, no, I don't want it.
 2   Q.   Was this the same bank bag?
 3   A.   No, it was a bank bag.  It was zippered on one
 4        side.  The other one had three sides zippered.
 5   Q.   So --
 6   A.   So she said well I'm going the take these in
 7        here and get the serial numbers off.  And I
 8        will be back.  And so she took off and I got
 9        out and followed her.  And her picture was on
10        Wal-Mart --
11   Q.   Let me stop you for a second.  She got out.
12        Where were you?
13   A.   Back at Wal-Mart.
14   Q.   So you were back at Wal-Mart this time?
15   A.   Uh-huh.
16   Q.   Go ahead.
17   A.   She got out and said she was going to take the
18        money to have them get the numbers off.  And I
19        followed her.  I went behind her.
20   Q.   You went in the store with her?
21   A.   Uh-huh.
22   Q.   Was she going to go in without you?
23   A.   Yeah.  But I followed her.  And then when we
24        walked through the door, they had a picture of
25        me right behind her.  And we went to customer
```